RAYMOND CARTWRIGHT )
)
    Petitioner, )      1:08-cv-103 / 1:04-cr-33
)
v. )
)      Chief Judge Curtis L. Collier
UNITED STATES OF AMERICA )
)
    Respondent. )

## M E M O R A N D U M

On April 25, 2008, Raymond Cartwright ("Petitioner") filed a 68 page document entitled "Motion special and limited entry of appearance pursuant to 28 U.S.C. § 2255" (Court File No. 104). The Court construed this filing as a motion to vacate, set aside, or correct Petitioner's sentence pursuant to 28 U.S.C. § 2255 (Court File No. 109). However, because the motion was "voluminous" and "virtually indecipherable," the Court ordered Petitioner to re-file within 30 days a new § 2255 motion. Petitioner did so, and it is his amended § 2255 motion which is now before the Court ("the § 2255 motion") (Court File No. 113).

The Court did not take immediate action on Petitioner's § 2255 motion, however, because Petitioner had an appeal pending regarding the Court's earlier denial of his Rule 60(b) motion for relief from judgment.[1] On May 24, 2010, Petitioner's petition for writ of certiorari in the United States Supreme Court was denied, thus the present motion effectively came before the Court once more. In the interim between 2008 and 2010, however, Petitioner had filed approximately 23

---

[1] Petitioner had earlier appealed his conviction to the Supreme Court, and the Court denied writ of certiorari (*see* Court File No. 101).

1

variously-captioned supplemental pleadings, almost all of which raise substantive arguments in favor of his § 2255 motion. It appearing to the Court that many of the supplemental pleadings may be untimely raising new grounds for relief outside of the one-year limitation period imposed in § 2255 cases,[2] the Court ordered the Government to file a response to Petitioner's § 2255 motion and the various supplemental pleadings, insofar as those pleadings support a ground for relief that was timely raised. The Court further instructed the Government to identify any claims in the supplemental pleadings which are untimely. On November 24, 2010, the Government filed its response (Court File No. 164). On December 29, 2010, Petitioner filed his reply (Court File No. 169).

For the reasons which follow, the Court determines none of Petitioner's myriad claims are meritorious. Accordingly, the Court will **DENY** Petitioner's amended § 2255 motion (Court File No. 113), as well as the various supplemental pleadings (Court File Nos. 104, 115-125, 132, 134, 135, 137, 138, 143-145, 147, 150, 152, & 153).

## I.    RELEVANT FACTS

At trial, Petitioner was convicted of one count of being a felon in possession of a firearm, and one count of being a felon in possession of ammunition. The underlying facts supporting Petitioner's conviction are taken from the summary provided in the Sixth Circuit's opinion affirming Petitioner's conviction:

---

[2]A one-year statute of limitations applies to § 2255 motions. The limitations period typically begins running on the date on which the judgment of conviction becomes final. *See* 28 U.S.C. § 2255(f)(1). Here, the Supreme Court denied Petitioner's writ of certiorari with respect to the appeal of his conviction on December 10, 2007 (*see* Court File No. 101). Thus, Petitioner had until December 10, 2008, to raise all grounds for relief.

On October 25, 2003, Detective Kevin White of the Bradley County Sheriff's Office (the "Sheriff's Office") observed Appellant Raymond Cartwright, Jr. driving a red Mercury Cougar. Detective White attempted to stop Appellant's vehicle because he knew that Appellant was driving on a revoked license and that there was an outstanding warrant for Appellant's arrest. Although Appellant managed to evade Detective White by driving at a high rate of speed, the detective and other members of the Sheriff's Office later stopped and arrested Appellant, who at the time was a passenger in a red Jeep Cherokee. When Sergeant Tom Wasson searched Appellant, he found a .22 caliber round on Appellant's person.

On January 27, 2004, Detective White stopped the same red Mercury Cougar after he observed it twice cross the center line. Earlier that day, a man had approached Detective David Shoemaker and Detective White, and the man told the two detectives that Appellant had approached him and had attempted to sell him a shotgun. When the car was stopped, Appellant was riding in the front passenger seat. Detective White found several 12-gauge shotgun shells, one next to the driver's seat and the rest in the armrest console of the car. At that time, Appellant told Detective Shoemaker (1) that the shells belonged to Chris Phillips, (2) that the shells were in his car because Phillips had given Appellant a 12-gauge Ithaca shotgun to sell for him, and (3) that Appellant no longer had the gun because he had given it back to Phillips. Officer Maskew later recovered an Ithaca pump 12-gauge shotgun based on information he received from Appellant. . . .

[At trial,] Detective Shoemaker testified that Appellant had confessed to him regarding the January 2004 incident that (1) the shotgun shells belonged to Chris Phillips, (2) the shells were in his car because Phillips had given Appellant a 12-gauge Ithaca shotgun to sell for him, and (3) Appellant no longer had the gun because he had given it back to Phillips. James Raby testified that in January of 2004, Appellant tried to sell him an Ithaca pump shotgun. Raby also testified that although he never saw the shotgun because he told Appellant that he was not interested in buying it, Appellant claimed he had the shotgun in the trunk of his car when he offered to sell it to Raby.

Appellant presented only one witness, his brother Scott Cartwright. Cartwright testified that Appellant gave him the red Mercury Cougar about two months prior to the October 25, 2003 incident. Although Cartwright claimed that he owned the car, he admitted that he let Appellant drive it. Cartwright also testified that the shell involved in the October 2003 incident was his and that his father had given him the shell before he died. However, Cartwright testified that he did not know anything about the shells involved in the January 2004 incident.

On May 4, 2005, the jury returned a verdict of guilty on Counts 1 and 2, and it returned a verdict of not guilty on Counts 3 and 4. On May 10, 2005, Appellant filed a motion for a new trial and a renewed motion for judgment of acquittal.

Appellant claimed that his motions should be granted on the basis of insufficient evidence and the verdict being against the manifest weight of the evidence. In support of his claim, Appellant noted that the red Cougar belonged to his brother Scott Cartwright; that based on the testimony at trial, there was no proof that Appellant knowingly possessed the shells; that Raby testified that he never saw a shotgun; that no other witness testified that he saw Appellant in the possession of a shotgun; and that there was a lack of evidence tying Appellant to a shotgun.

On July 28, 2005, the district court denied these motions. The district court first considered the motion for judgment of acquittal. The court noted that Detective Shoemaker testified that Appellant confessed that he had been trying to sell a shotgun for Phillips and that Appellant knew the shells were in the car, as they had come from his attempts to make the sale. The district court further stated that Appellant's confession was consistent with Raby's testimony that Appellant had tried to sell him a shotgun and had told him the gun was in the trunk of the Cougar. The district court also pointed out that Appellant's only witness did not offer any testimony about the January 2004 incident. Accordingly, the court held that "there was ample evidence upon which the jury could have based its finding [that Appellant] knowingly possessed the shotgun shells." J.A. at 42. The district court reiterated its discussion of Raby's and Detective Shoemaker's testimony in holding that "there is sufficient evidence to support the conviction on Count 2" also. J.A. at 42. Finally, the district court denied the motion for a new trial on the grounds that "there was ample evidence upon which the jury could have based its verdict," again referring to Appellant's confession to Detective Shoemaker and the testimony of other witnesses. J.A. at 44.

*United States v. Cartwright*, 221 F. App'x 438, 439-40 (6th Cir. 2007).

At sentencing, the Court found Petitioner's prior convictions rendered him an Armed Career Criminal under U.S.S.G. § 4B1.4, which resulted in a Guidelines range of 262 to 327 months' imprisonment. On December 1, 2005, the Court sentenced Petitioner to a term of imprisonment of 288 months, with five years' supervised release (Court File No. 79).

Petitioner appealed his conviction, raising only one issue: sufficiency of the evidence. The Sixth Circuit affirmed this Court's ruling. *See Cartwright*, 221 F. App'x at 442. Petitioner filed a writ of certiorari with the Supreme Court, which was denied. Petitioner also filed a "Motion Pursuant to Civil Procedure Rule 60(b) Newly Discovered Evidence" (Court File No. 107), which

4

the Court denied (Court File No. 109). Petitioner appealed this ruling, and the Sixth Circuit affirmed this Court (*see* Court File No. 140). Petitioner filed a writ of certiorari with the Supreme Court, which was denied. *See Cartwright, v. United States*, No. 09-10364, 2010 WL 1654883 (U.S. May 24, 2010).

## II.    STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside the sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which

5

necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

## III.   DISCUSSION

Petitioner's § 2255 motion and score of supplemental briefs assert numerous grounds for relief, none of which have merit, and most of which are frivolous. For sake of clarity, the Court will begin with the § 2255 motion, and work its way chronologically through the supplemental briefs.

### A. § 2255 Motion

In his amended § 2255 motion (Court File No. 113), Petitioner raises six grounds for relief: 1) ineffective assistance of counsel; 2) lack of jurisdiction; 3)"district court errors;" 4) inaccuracies in the Presentence Report ("PSR"); 5) prosecutorial misconduct; and 6) jury misconduct.

#### 1.  Ineffective Assistance of Counsel

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the

7

ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

Here, the bulk of Petitioner's ineffective assistance claim consists of undeveloped, conclusory allegations which cannot satisfy Petitioner's burden of showing he is entitled to relief. For example, with little to no explanation, Petitioner claims his attorney was ineffective because, *inter alia*, he failed to raise his own ineffectiveness on direct appeal; failed to challenge a "mandatory sentence enhancement;" failed to motion for the undersigned's recusal; failed to move to suppress the fruits of the traffic stop; failed to communicate sufficiently with Petitioner, failed to explain to Petitioner what two (unspecified) stipulations meant; failed to call (unspecified) alibi witnesses; failed to argue on appeal that the district court improperly refused to declare a mistrial; committed "translatation [sic] fraud against the defendant and the court;" and failed to appeal (unspecified) alleged inaccuracies in the PSR. Some of these allegations are plainly erroneous on their face – such as that counsel is ineffective for failing to challenge a concededly mandatory sentencing enhancement. Those which are not are stated summarily, devoid of any facts or legal argumentation which would enable the Court to analyze the claims to determine whether Petitioner's counsel was deficient, and whether such deficiency was prejudicial. *See Maxwell v. United States*, Nos. 2:03-CR-72, 2:07-CV-143, 2009 WL 3615077, *5 (E.D. Tenn. Oct. 28, 2009) ("A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit."). Accordingly, the Court cannot find Petitioner's counsel was ineffective on any of the above bases.

8

Petitioner also argues his counsel was ineffective for failing to introduce allegedly exculpatory audio/video recordings of petitioner's "confession" to the police. However, Petitioner has presented no evidence showing exculpatory recordings exist or existed, thus the Court cannot find Petitioner's counsel was ineffective for failing to introduce such evidence.

Additionally, Petitioner argues his counsel was ineffective for failing to object to the introduction into evidence of an Ithaca pump shotgun. Petitioner argues that because no eyewitnesses ever "put the gun in his hands," the gun should not have come into evidence. However, even assuming it was error not to object admission of the shotgun, such admission can hardly be said to be prejudicial. At trial, James Raby testified that Petitioner offered to sell him an Ithaca shotgun. What is more, Detective Shoemaker testified that Petitioner himself admitted to possessing the shotgun and trying to sell it. This testimony went uncontroverted. Accordingly, even assuming it was error for counsel not to object to admission of the shotgun – a finding the Court does not here make – such error cannot plausibly be described as prejudicial vis-a-vis the jury's conclusion that Petitioner did, in fact, possess a shotgun.

Finally, Petitioner claims his counsel provided ineffective assistance by failing to properly investigate his history of treatment for "severe drug addictions." According to Petitioner, he should have been afforded a competency hearing based on this history, which would have resulted in his being found incompetent to stand trial. However, even if counsel was deficient in investigating Petitioner's history of drug abuse and treatment, Petitioner cannot show prejudice. Petitioner received treatment in the mid to late 1990's, but went to trial in 2005. A competency hearing is only ordered "if there is reasonable cause to believe that the defendant may *presently* be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to

understand the nature and consequences of the proceedings against him."  18 U.S.C. § 4241(a) (emphasis added).  Petitioner has not explained how his treatment in the mid to late 1990's bore on whether he was competent to stand trial in 2005.  Moreover, Petitioner's flurry of *pro se* filings stretching back to 2005 suggests he was not "unable to understand the nature and consequences of the proceedings against him."

Accordingly, the Court finds Petitioner has not shown his trial counsel was ineffective.

### 2. Lack of Jurisdiction

Petitioner claims this Court lacked jurisdiction over his trial.  The substance of this argument is impenetrable.  Petitioner was charged with committing a federal crime within the jurisdictional boundaries of the Eastern District of Tennessee (*see* Court File No. 33).  Accordingly, the Court had jurisdiction over Petitioner's trial, and his objection to the contrary is without merit.  *See* U.S. Const. art. III, § 2.

### 3. "District Court Errors"

Under this heading, Petitioner lists many purported errors, namely: 1) the jury was tainted by outside influences; 2) a mistrial was not called when the jury declared they were deadlocked; 3) the Court contacted the jury in a personal capacity; 4) the Court failed to record a jury note; 5) the Court kept secret from Petitioner that the jury was deadlocked; 6) the Court failed to recuse itself; 7) the Court refused to allow the jury to see a hand-written police report describing Petitioner's traffic stop; 8) the Court sentenced Defendant using an incorrect PSR; and 9) Petitioner has been forced to use an inaccurate transcript.

As with the allegations of ineffective assistance, most of these claims of error are stated cursorily with little to no development or factual support.[3]  Furthermore, Petitioner concedes none of these issues were raised on direct appeal to the Sixth Circuit, though they could have been.  As such, the claims are procedurally defaulted, and may therefore only be raised in a § 2255 motion if Petitioner can first establish: 1) cause to excuse his failure to raise the claim previously; and 2) actual prejudice resulting from the alleged violation.  *See Bousley v. United States*, 523 U.S. 614, 621-22 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised only if the defendant can first demonstrate either "cause" and actual "prejudice," or that he is "actually innocent."); *Johnson v. United States*, No. 90-2124, 1991 WL 150851, *1 (6th Cir. Aug. 7, 1991) ("If any issue could have been raised on direct appeal, the failure to raise it therein precludes review in a § 2255 proceeding unless the petitioner can show cause for the procedural default and actual prejudice resulting from the errors of which petitioner complains."); *see also Peveler v. United States*, 269 F.3d 693, 698-700 (6th Cir. 2001).  This "hurdle" is "intentionally high . . ., for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal."  *Peveler*, 269 F.3d at 700 (citing *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000)).

Here, Petitioner claims the "cause" of his failure to raise these claims on appeal was his attorney's errant failure to do so.  However, the Supreme Court has held "the question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  "[C]ounsel need not raise every conceivable colorable claim on appeal in order to fulfill his duty to his client." *Barrow v. United States*, 8 F.

[3]For example, Petitioner offers no proof that the transcript is inaccurate.

App'x 286, 288 (6th Cir. 2001); *see also Long v. United States*, No. 97-3609, 1998 WL 887272, *2 (6th Cir. Dec. 10, 1998) ("[Petitioner] has no constitutional right to have every nonfrivolous issue raised in an appeal."). Rather, a petitioner "bear[s] the risk of attorney error that results in a procedural default," so long as he "is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland*." *Murray*, 477 U.S. at 488. In other words, to overcome procedural default by arguing ineffective assistance of appellate counsel, "a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermined the reliability of the defendant's convictions." *Barrow*, 8. F. App'x at 288.

Thus, in order establish cause sufficient to waive his procedural default of the "district court errors," Petitioner must show his appellate counsel was ineffective to a constitutionally-significant degree in failing to raise on direct appeal Petitioner's nine enumerated "district court errors." This is a showing Petitioner has not made. Indeed, the memorandum supporting Petitioner's § 2255 motion makes no mention whatsoever of his counsel's failure to raise the "district court errors" on direct appeal. In his reply brief, Petitioner does assert appellate counsel's "ineffectiveness deprived the Petitioner of effective assistance of counsel on first time appeal by failing to raise his many objections to the appeals court" (Court File No. 169, p. 12). However, this is *only* assertion; Petitioner fails to develop any relevant *argument* that appellate counsel was ineffective under the *Strickland* standard – that is, that appellate counsel's decision not to raise these issues on appeal was so egregious that counsel was "scarcely functioning as counsel at all," *Barrow*, 8. F. App'x at 288,

and that the outcome of Petitioner's appeal would likely have been different had counsel raised the issues.[4]

Mere incantation of "ineffective assistance" is insufficient to surmount the "intentionally high hurdle" blocking collateral review of issues not raised on direct appeal. *See Peveler*, 269 F.3d at 700. If it were, the "hurdle" would be no hurdle at all, and the principle that a petitioner generally "bear[s] the risk of attorney error that results in a procedural default" would be nullified. *See Murray*, 477 U.S. at 488. Faced with a similar situation of a petitioner perfunctorily invoking ineffective appellate assistance to circumvent procedural default, the Sixth Circuit said:

> Having failed to raise his claim . . . on direct appeal, [Petitioner] was required to demonstrate in his § 2255 proceedings cause and prejudice with regard to that default. He did not. . . . His conclusory statement in his brief in support of the § 2255 motion that "counsel's failure to raise the issue . . . on direct appeal constitutes ineffective assistance of counsel and demonstrates both cause and prejudice . . ." is wholly insufficient to raise the issue of ineffective assistance of counsel . . . .

*Elzy*, 205 F.3d at 886 (6th Cir. 2000). Just so, Petitioner's conclusory assertion that his counsel's ineffective assistance is to blame for his procedural default is "wholly insufficient" to show cause and prejudice justifying waiver of the procedural default.

Accordingly, the Court concludes Petitioner is not entitled to relief on his claims of "district court errors."

### 4. Incorrect PSR Information

Petitioner claims his PSR incorrectly calculated his Guidelines range, and contained inaccuracies which erroneously resulted in his being sentenced under the Armed Career Criminal

---

[4]For example, Petitioner cites a "break-down in communications" between him and his attorney during the appellate process. But the existence of such a "break-down," even if true, is irrelevant to the question of whether it was prejudicial error for his attorney not to raise certain issues.

13

Act.  As with the "district court errors," Petitioner concedes he did not raise the issue on appeal.

Again, Petitioner has not shown cause and prejudice for excusing the default,[5] thus this claim must

be rejected.

### 5.  Prosecutorial Misconduct

Petitioner claims the prosecutor violated discovery orders, asked leading questions of a

witness, introduced inadmissible evidence, and suborned perjury.  Again, these issues were not

raised on appeal, and Petitioner has made no showing of cause and prejudice to excuse the default.

### 6.  Jury Misconduct

Petitioner alleges the jury wrongfully discussed the case during their lunch break, and that

Magistrate Judge Carter[6] loaned a juror his cell phone to make a call, thereby "violat[ing] every rule

in the code of judicial conduct."  In addition to being patently frivolous, these claims were not raised

on appeal, and Petitioner has made no showing of cause and prejudice to excuse the default.

For the foregoing reasons, the Court finds all grounds raised in Petitioner's § 2255 motion

are without merit, and will therefore **DENY** the motion (Court File No. 113).

### B.  July 21, 2008 "Motion Nunc Pro Tunc Order Request to be Issued" (Court File No. 115)

The Court is unsure of what, if anything, Petitioner means when he motions the Court to

issue a "nunc pro tunc order" in this case.  Nonetheless, the Court is quite sure Petitioner has

provided no factual or legal support for this relief, and so the motion will be **DENIED**.

---

[5]His § 2255 motion simply recites the phrase "ineffective assistance of counsel on direct appeal."

[6]Who was not involved in this case, incidentally.

**C. July 21, 2008 "Notice Supplemental to § 2255 Memorandum" (Court File No. 116)**

This supplemental brief contains two case citations which purportedly support Petitioner's argument in his § 2255 motion that the prosecutor suborned perjury, though Petitioner provides no explanation as to how they are relevant. As discussed above, Petitioner's claim regarding the prosecutor's use of perjured testimony has been procedurally defaulted. Accordingly, insofar as this filing requests relief, it will be **DENIED**.

**D. August 4, 2008 "Amending § 2255" (Court File No. 117)**

In this supplemental brief, Petitioner claims: 1) the prosecutor and defense counsel conspired to have Petitioner sign two (unspecified) stipulations; 2) he should not have been sentenced as an Armed Career Criminal because the jury did not find beyond a reasonable doubt that he had sustained the prior predicate convictions. Again, these claims have been procedurally defaulted, and Petitioner makes no showing of cause and prejudice to excuse the default. The Court will **DENY** any request for relief contained herein.

**E. August 20, 2008 "Notice Under Article II Judicial Notice Rule 201(f)" (Court File No. 118)**

In this document, Petitioner raises a host of issues, most of which concern supposed Fourth Amendment infirmities with the stop and search of Petitioner's car. Petitioner also alleges the prosecutor withheld evidence, and 18 U.S.C. § 922(g)(1) is unconstitutional because it violates the Commerce Clause. With the exception of the withholding of evidence claim, all of these issues have been procedurally defaulted, and Petitioner makes no showing of cause or prejudice.[7]

_____

[7]Additionally, the Court notes Fourth Amendment claims are not to be considered in § 2255 proceedings. As the Supreme Court held in *Stone v. Powell*, 428 U.S. 465, 494 (1976), a petitioner may not raise Fourth Amendment claims under 28 U.S.C. § 2254. The Court's rationale in *Stone*

As to the withholding of evidence, the Sixth Circuit has already considered and rejected this argument in its November 13, 2009 order disposing of Petitioner's appeal of this Court's denial of a post-conviction motion (Court File No. 140). The Sixth Circuit found "it is clear that the evidence was available to counsel and was not being withheld by the government" (id. at p. 2). Petitioner cannot relitigate this issue through a § 2255 motion. *See Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) ("It is equally well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law.").

Accordingly, the Court will **DENY** any request for relief contained in this brief.

**F. September 2, 2008 "Judicial Notice Under Rule 201 Amending § 2255 Petition" (Court File No. 119)**

In this amendment to his § 2255 motion, Petitioner repeats his claims that the prosecutor improperly withheld evidence, and that the search and seizure of shotgun shells from his vehicle violated the Fourth Amendment. For reasons already discussed, Petitioner is not entitled to relief on these claims.

Petitioner also apparently argues he is entitled to a reduction of his sentence based on Amendment 709 to the Guidelines, which deals with the counting of multiple prior sentences and the use of misdemeanor and petty offenses in determining a defendant's criminal history score. The Court already has considered this argument, raised in Petitioner's 18 U.S.C. § 3582(c) motion, and determined the amendment at issue – Amendment 709 – "is not listed as an amendment that may

---

applies equally to § 2255 proceedings. *See, e.g., Brock v. United States*, 573 F.3d 497, 500 (7th Cir. 2009); *United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993); *Hunt v. United States*, No. 2:09-CV-419, 2010 WL 3703205, *5 (S.D. Ohio Sept. 17, 2010).

16

be applied retroactively under USSG § 1B1.10," and therefore "the Court has no authority to reduce [Petitioner's] term of imprisonment" (Court File No. 127, p. 2). Accordingly, this claim, and all other claims raised in this document, will be **DENIED**.

### G. September 15, 2008 "Motion to Amend the § 2255 Petition" (Court File No. 120)

This document simply contains copies of two cases, with no accompanying argumentation. However, to the extent any relief is sought, it will be **DENIED**.

### H. September 15, 2008 "Judicial Notice Under Article II Rule 201(f)" (Court File No. 121)

In this brief, Petitioner repeats his assertions of a tainted jury, Court bias, and prosecutorial misconduct. Again, these claims have been procedurally defaulted and Petitioner makes no showing of cause and prejudice. Accordingly, the Court will **DENY** all relief sought.

### I. December 9, 2008 "Motion to Expedite [sic] § 2255 Habeas Corpus Petition for Relief" (Court File No. 122)

In this motion, Petitioner claims the Court and Judge Carter engaged in judicial misconduct by having *ex parte* contact with jurors.[8] He also claims the Court failed to put a note from the jury in the record. As with most of Petitioner's claims, these have been procedurally defaulted by not

---

[8]The supposed improper *ex parte* contact consisted of the following: During a lunch break, the Court and Judge Carter were walking down the sidewalk when they observed Petitioner's family having a loud altercation, involving shouted obscenities what appeared to be one family member about to hit another. Some jurors were coming up behind the Court and Judge Carter, walking towards the altercation, and the Court and Judge Carter briefly suggested to the jurors that they stay back for a moment until Petitioner's family members moved on.

being raised on appeal, and Petitioner has made no showing of cause and prejudice to excuse the default.[9]  Accordingly, the Court will **DENY** any requested relief.

### J.  December 19, 2008 "Notice" (Court File No. 123)

This filing, and all subsequent documents, comes after the expiration of the one-year statute of limitations period described in 28 U.S.C. § 2255(f)(1).  Accordingly, this and all subsequent filings will only be considered insofar as they "relate back" to claims raised within the limitations period.  The Court will not consider any new grounds for relief.  *See Howard v. United States*, 533 F.3d 472, 475-76 (6th Cir. 2008).

In this filing, Petitioner alleges the Prosecutor put on perjured testimony, and also alleges evidence should have been suppressed because it was obtained in violation of the Fourth Amendment.  As already stated several times above, the claim of prosecutorial misconduct is procedurally defaulted.  Here, as before, Petitioner has neither attempted nor made any showing of cause and prejudice to excuse the default.  Likewise, as discussed above, the Fourth Amendment claim, in addition to being procedurally defaulted, is not a cognizable claim in a § 2255 motion.

Accordingly, nothing in this filing entitles Petitioner to relief, and the Court will **DENY** any such request.

---

[9]Additionally, the Court notes Petitioner's claims are patently frivolous.  The Court and Judge Carter's momentary contact with jurors on the sidewalk cannot plausibly be described as improper *ex parte* contact.  *See* Code of Conduct for U.S. Judges, Canon 3(A)(4).  However, even if they could, Petitioner has failed to explain, or even suggest, how the Court's caution to jurors that they stand back for a minute could have tainted the trial.  The Court's remark, if anything, saved Petitioner from possible prejudice resulting from the jurors walking into a fight among his family members.  Additionally, the jury note which Petitioner claims was not filed in the record is, in fact, in the record (Court File No. 57).

**K.  February 13, 2009 "Judicial Notice Under Article II Rule 201(f)" (Court File No. 124)**

This document raises several issues.  First, Petitioner reiterates his contention evidence was obtained in violation of the Fourth Amendment.  For reasons already discussed, this claim must fail.  Second, in one sentence, Petitioner alleges it was "mapractice [sic] for court appointed attorney Mike A. Little not to motion the district court for suppression hearing" (Court File No. 124, p. 3).  This claim "relates back" to Petitioner's timely-raised ineffective assistance claim.  However, Petitioner's one-sentence conclusory assertion of legal malpractice, with no explanation of why it was deficient of counsel not to move for suppression and how that failure caused Petitioner prejudice, provides an inadequate basis for the Court to review this claim.  *See United States v. Thomas*, 38 F. App'x 198, 201 (6th Cir. 2002) ("failure to file a suppression motion is no ineffective *per se*").[10]  Third, Petitioner alleges it was error for the Court to consider his prior arrest record at sentencing.  This is a new ground for relief which does not relate back to any claims raised inside

---

[10]The Court further notes Petitioner's Fourth Amendment claim, as best the Court can understand it, appears meritless and thus incapable of supporting an ineffective assistance claim. *See Thomas*, 38 F. App'x at 201 (noting counsel may not be criticized for failing to file a meritless suppression motion).  Petitioner appears to claim incriminating statements made by himself should have been suppressed because he was not Mirandized prior to making those statements.  However, uncontroverted testimony showed Petitioner made these statements voluntarily during a non-custodial traffic stop and consensual search of the vehicle he was a passenger in.  Thus, suppression of his statements would not be proper.  *See United States v. Davis*, 27 F. App'x 592, 601 (6th Cir. 2001) (reiterating the well-established rule that police are not required to give Miranda warnings during non-custodial encounters, and noting "*Miranda* warnings are not required simply because the questioned person is one whom the police suspect.") (quotation omitted); *see also Maryland v. Shatzer*, 130 S. Ct. 1213, 1224 (2010) ("the temporary and relatively nonthreatening detention involved in a traffic stop . . . does not constitute *Miranda* custody").

19

the limitations period. Additionally, it was not raised on appeal and thus has been procedurally defaulted absent a showing of cause and prejudice, which Petitioner has not made.[11]

Accordingly, nothing in this document entitles Petitioner to relief, and the Court will **DENY** any such request.

### L. February 19, 2009 "Attachment to § 2255 Petition" (Court File No. 125)

In this document, Petitioner repeats his claim that the search of the vehicle he was in violated the Fourth Amendment. Specifically, Petitioner alleges police were not justified in relying upon a "tip" from an informant. As explained above, this claim is both procedurally defaulted and improperly brought in a § 2255 motion. Accordingly, the Court will **DENY** all requested relief.

### M. July 16, 2009 "Motion to Amend the § 2255 Habeas Corpus" (Court File No. 132)

Once again, Petitioner argues the search of the vehicle was improper under the Fourth Amendment. Once again, the Court must reject this claim as procedurally defaulted and improperly brought, and **DENY** all requested relief.

### N. September 14, 2009 "Motion for Leave to Amend the Pending § 2255 Petition for Relief" and "Supporting Brief" (Court File Nos. 134 & 135).

In these documents, Petitioner argues his Indictments were defective because they did not cite 18 U.S.C. § 924(e), that is, the Armed Career Criminal Act ("ACCA"). He also argues his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000) because the fact of his prior convictions was not proven to the jury beyond a reasonable doubt. The first of these claims is untimely because it does not relate back to a claim raised within the one-year limitations period, and

---

[11]Additionally, it is a baseless claim. As the record shows, the Court did not address Petitioner's prior arrest record at sentencing.

20

both of these claims are procedurally defaulted as well. Additionally, the claims are meritless. Indictments do not need to cite § 924(e) or state that the defendant may be subject to a mandatory minimum sentence under the ACCA. *See United States v. Miller*, 371 F. App'x 646, 650 (6th Cir. 2010) ("there is no requirement that notice be given to the defendant and the district court is *required* by the plain language of the statute to impose the mandatory sentence where applicable regardless of whether the government has requested the enhancement"). Likewise, *Apprendi* does not require prior convictions used to enhance a defendant's sentence be proven to a jury beyond a reasonable doubt. *See id.* at 651 ("*Apprendi* excepts the fact of a prior conviction, which may be found by a judge at sentencing by a preponderance of the evidence"). Accordingly, the Court will **DENY** all relief requested in these documents.

### O. September 14, 2009 "Motion for Leave to Amend § 2255" (Court File No. 137)

In this motion, Petitioner claims his 1981 burglary conviction was improperly regarded as a predicate offense for purposes of the ACCA because the copy of his guilty plea provided "insufficient information," in violation of *Shepard v. United States*, 544 U.S. 13 (2005). This claim does not relate back to any claims raised during the one-year limitations period, and has also been procedurally defaulted without any showing of exculpatory cause and prejudice. Accordingly, the Court will **DENY** relief.

### P. September 18, 2009 "Motion for Leave to Amend the Pending § 2255 for Relief" (Court File No. 138)

In this document, Petitioner claims his "walk away escape" should not have been regarded as an ACCA predicate offense. He has not identified which of his two escape convictions he is

referring to.[12]  Additionally, he argues several of his other convictions should not count as separate

ACCA predicates because he was discharged from Tennessee state custody on the same day for all

the offenses.  Although neither of these claims relates back to claims raised within the one-year

limitations period, Petitioner's first claim is arguably timely since it may be premised on *Chambers*

*v. United States*, 555 U.S. 122 (2009) (holding the crime of "failing to report" is not a predicate

"violent felony" under the ACCA), though Petitioner does not mention *Chambers*.  However, it is

unnecessary to determine whether Petitioner's escape qualifies as an ACCA predicate, because even

without this predicate Petitioner has more than three others, namely, another escape conviction, three

burglary convictions, and an incest conviction.  *See United States v. Bailey*, 264 F. App'x 480, 483

(6th Cir. 2008) (finding it unnecessary to determine whether an offense was an ACCA predicate

when there were at least three other prior offenses which were ACCA predicates).  As for the claim

various convictions should not be counted as ACCA predicates when Petitioner was released from

custody on the same day for all of them, this claim is untimely, procedurally defaulted, and

meritless.  It is irrelevant for ACCA purposes when a defendant was released from custody; all that

matters is that the offenses "occurred on occasions different from one another," as they did here.

*United States v. Taylor*, 301 F. App'x 508, 520 (6th Cir. 2008) (quotation omitted).  Accordingly,

the Court will **DENY** all relief requested in this document.

### Q.  February 16, 2010 "Supplement to § 2255 Habeas Corpus" (Court File No. 143)

In this document, Petitioner repeats his claims that the Government withheld evidence, and

that the stop and search of his car violated the Fourth Amendment.  Additionally, Petitioner argues

---

[12]The Court assumes Petitioner is referring to the conviction listed in ¶ 44 of his PSR, which is described as "Felonious Escape from Penitentiary While on Work Release," rather than the "Felonious Escape from Jail" listed in ¶ 45.

the district court erred by failing to instruct the jury to ignore hearsay. The first two claims relate back to timely-raised claims; the latter does not, and so will be disregarded as untimely.[13] As already discussed, the Sixth Circuit has rejected Petitioner's claim that the Government withheld evidence. This issue cannot be relitigated through a § 2255 motion. *See Jones*, 178 F.3d at 796. Likewise, as already discussed, Petitioner's Fourth Amendment claim is not only procedurally defaulted, it is not properly brought in a § 2255 motion. Accordingly, the Court will **DENY** all relief requested in this document.

### R. March 18, 2010 "Motion Amicus Curiae" (Court File No. 145)

This document repeats arguments Petitioner has made in previous arguments, adding nothing new. Petitioner asserts the Government withheld evidence and put on perjured testimony. He also claims the district Court erred by failing to instruct the jury to ignore hearsay. The first two claims relate back to timely-raised claims; the latter does not and so is untimely. The Sixth Circuit has rejected Petitioner's claim about withheld evidence, and this claim cannot be relitigated. Petitioner's claim regarding perjury has been procedurally defaulted, and Petitioner has made no showing of cause or prejudice to excuse the default. Accordingly, the Court will **DENY** all relief requested in this document.

### S. April 29, 2010 "Motion Request for Detention Hearing" (Court File No. 150)

In this document, Petitioner again argues the Government withheld evidence. This issue has been decided by the Sixth Circuit, and cannot be relitigated here. The Court will **DENY** all requested relief.

### T. May 10, 2010 "Motion to Supplement § 2255 Petition" (Court File No. 152)

---

[13]It is also procedurally defaulted, and Petitioner has not shown cause or prejudice.

In this document, Petitioner argues it was improper to enhance his sentence under the ACCA based on prior convictions that were not found beyond a reasonable doubt by the jury. Additionally, Petitioner repeats his argument that the PSR contained incorrect information. As already discussed, both these claims are procedurally defaulted, and Petitioner has not shown cause or prejudice. Additionally, as discussed earlier, prior convictions used to enhance a defendant's sentence do not need to be proven to a jury beyond a reasonable doubt. *See Miller*, 371 F. App'x at 651. Accordingly, the Court will **DENY** all relief requested in this document.

**U. June 4, 2010 "Addendum to the Pending § 2255 Habeas Corpus" (Court File No. 153)**

In this document, Petitioner repeats his argument the PSR contained incorrect information. This argument was procedurally defaulted and Petitioner has made no showing of cause or prejudice to excuse the default. Accordingly, the Court will **DENY** all requested relief.

**IV. CONCLUSION**

None of the grounds asserted by Petitioner in his numerous briefs supports relief pursuant to 28 U.S.C. § 2255. Accordingly, the Court will **DENY** Petitioner's § 2255 motion and all other documents which may be construed as related to the § 2255 motion (Court File Nos. 104, 113, 115-125, 132, 134, 135, 137, 138, 143, 145, 150, 152, & 153).

In addition to the above, this Court **CERTIFIES** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is **DENIED**. Fed. R. App. P. 24. Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Fed. R.

App. P. 22(b), or reasonable jurists would disagree on the resolution of this matter, thus a certificate of appealability **SHALL NOT ISSUE**. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

An Order shall enter.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

\